# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3916

_____

United States of America,    *
                             *
            Appellee,        *
                             *    Appeal from the United States
        v.                   *    District Court for the
                             *    Northern District of Iowa.
Timothy Yerkes,              *
                             *
            Appellant.       *


_____

Submitted:  May 12, 2003

Filed:  October 3, 2003

_____

Before MORRIS  SHEPPARD ARNOLD,  HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Timothy Yerkes was convicted of possession with intent to distribute methamphetamine (violating 21 U.S.C. § 841(a)(1)) and with illegal possession of pseudoephedrine pills (violating 21 U.S.C. § 841(c)(2)). Yerkes raises three issues on appeal. He argues that his right to a speedy trial was violated, that he should receive a new trial based upon newly discovered evidence, and that he should not have been

assessed an upward role adjustment when the district court[1] sentenced him. We find no error and affirm his sentence.

## I.

In the early morning of a rainy December 5, 2001, two local deputies observed Yerkes driving a white Ford pickup truck through a farm field. The Ford's headlights were off. When the deputies approached the Ford, Yerkes moved suddenly, perhaps in a motion to throw items out of the truck. The deputies identified themselves, and Yerkes then exited the truck. Once Yerkes was outside of the Ford, one of the deputies began a search in and around the Ford. He found a variety of items; each suggested a use for possible methamphetamine manufacturing. Officers also seized keys to the Ford and to two other vehicles–a blue Mustang and a blue truck. As a result of these discoveries, Yerkes was arrested.

Some months after the seizure, additional items were discovered in the bed of the Ford. After Yerkes's arrest, police seized the Ford and stored it at a secure warehouse from December 5, 2001, until March 22, 2002. It was then moved to a different warehouse. On April 10, 2002, an agent discovered a black briefcase in the bed of the truck. Inside the briefcase, he found two 36-count bottles of pills containing 25.6 grams of pseudoephedrine. Also in the briefcase were seven four-packs of lithium batteries and rolled tinfoil. In addition to the briefcase, the agent discovered a spotlight, a sewer hose, two funnels, a case of oil, pecan halves, and a tire gauge. Each of the items was listed on a Wal-Mart receipt that the deputies had discovered in a camera bag seized on the night of Yerkes's arrest.

On February 22, 2002, Yerkes was indicted for possession with intent to distribute methamphetamine. Later, a two-count superceding indictment was filed on

_____

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

April 15, 2002. Then, on April 26, 2002, Yerkes's original counsel filed a motion to withdraw due to a conflict of interest. On May 2, 2002, the district court held a hearing on defense counsel's motion to withdraw. Yerkes was not present for the hearing. The district court granted defense counsel's motion on May 2, 2002, appointed substitute counsel, and continued the trial until June 10, 2002. On May 15, 2002, Yerkes filed a motion to dismiss for a speedy-trial violation. The district court denied that motion, and the case proceeded to trial.

Yerkes's trial began on June 10, 2002, and ended on June 13, 2002. At trial, several of Yerkes's accomplices–including Lynette Upchurch and Nicholas Houser–testified against him. Houser, for example, testified that Yerkes instructed him to place three of Yerkes's vehicles (the Ford, a blue Mustang, and a blue pickup truck) in Houser's name. In addition, Upchurch testified that Yerkes asked her to purchase precursors[2]–including starting fluid, pseudoephedrine, and coffee filters. After trial, the jury found Yerkes guilty. As a result of his accomplices' testimony, the district court enhanced Yerkes's sentence, reasoning that he qualified as a manager or supervisor under Sentencing Guidelines § 3B1.1. Yerkes appeals on three grounds.

## II.

Yerkes first argues that his right to a speedy trial was violated. Under the Speedy Trial Act ("the Act"), a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later. 18 U.S.C. § 3161(c)(1); *see also United States v. Dezeler*, 81 F.3d 86, 88 (8th Cir. 1996). Certain days, however, may be excluded from the seventy-day calculation. 18 U.S.C. § 3161(d) and (h); *see also Dezeler*, 81 F.3d at 88. After these days are excluded, if the total number of days exceeds seventy, then upon a defendant's motion, the district court must dismiss the indictment. 18 U.S.C. § 3162(a)(2); *see*

---

[2] Precursors are items that are useful for the manufacture of drugs.

*also United States v. Cardona-Rivera*, 64 F.3d 361, 363 (8th Cir. 1995). Yerkes made such a motion for dismissal, which the district court denied.

We review the district court's findings of fact on this issue for clear error, but review its legal conclusions de novo. *United States v. Van Someren*, 118 F.3d 1214, 1216 (8th Cir. 1997). To determine whether the right to a speedy trial has been violated, we count the days between arraignment and trial. Yerkes was indicted and arraigned on February 22, 2002. Thus, the speedy trial calculation began the next day on February 23, 2002. *United States v. Long*, 900 F.2d 1270, 1274 (8th Cir. 1990) (citation omitted); *United States v. Severdija*, 723 F.2d 792, 793 & tbl. (11th Cir. 1984). Yerkes, however, was not tried until June 10, 2002–well over seventy days after the arraignment.

Nevertheless, we find no speedy-trial violation because much of the time between February 23 and June 10 should be excluded from the speedy-trial calculation. Initially, we note that the speedy trial clock ran for fifty-two days after Yerkes was indicted. However, several events then occurred, which required the exclusion of fifty-six days. First, on April 15, 2002, the Government dismissed the original indictment and filed a superceding indictment. Yerkes was arraigned on the superceding indictment on April 25, 2002. Therefore, the ten days between the superceding indictment and the new arraignment are excluded. 18 U.S.C. § 3161(h)(6); *see also Van Someren*, 118 F.3d at 1219 (holding that a period between a superceding indictment and a rearraignment was excludable from the seventy-day clock).

Then, on the very next day, April 26, 2002, Yerkes's original counsel filed a motion to withdraw. On May 2, 2002, the district court held a hearing in which Yerkes's counsel disclosed that her continuing representation of Yerkes would violate

Yerkes's right to be represented by an attorney who is free of conflicts of interest.[3] The district court agreed and issued an order, which permitted Yerkes's original counsel to withdraw. Moreover, in that same order, the district court directed that a new counsel be appointed. In addition, the district court on May 2, 2002, *sua sponte*, reset Yerkes's original trial date from May 7, 2002, to June 10, 2002, to allow reasonable time for Yerkes's new counsel to prepare for trial.

These two periods of time are also excludable under the Act. First, under 18 U.S.C. § 3161(h)(1)(F), the time–from when any party files a motion until when a hearing is held–is excluded from a speedy-trial calculation. *Long*, 900 F.2d at 1274. Thus, the seven days from the motion on April 26, 2002, until the hearing on May 2, 2002, are also excluded. Second, the continuance of the trial on May 2, 2002, to June 10, 2002, may be excluded from any speedy trial calculation "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

In this case the trial judge specifically found that the "continuance of the case was based upon the need to replace counsel as the result of the conflict of interest then existing, and to allow reasonable time for new counsel to prepare." Such a finding was properly within the trial court's consideration. 18 U.S.C. § 3161 (h)(8)(B)(iv) ("Whether the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation . . . .") We therefore defer to the district court's factual determination that the needs for granting the continuance outweighed the other factors. *United States v.*

---

[3] Yerkes was not present at this conference. As a result, he also argues that his absence violated his right to object to the continuance and to preserve his right to a speedy trial. However, Yerkes had no right to be present. *See* Fed. R. Crim. P. 43(b) ("A defendant need not be present . . . [when] [t]he proceeding involves only a conference or hearing on a question of law.")

*Stackhouse*, 183 F.3d 900, 902 (8th Cir. 1999) (per curiam). Thus, because only fifty-two countable days expired from the time of the original indictment, there is no violation of the Act.

## III.

Next, Yerkes contends that he is entitled to a new trial based upon newly discovered evidence. Specifically, Yerkes wants to present the testimony of Gregory Curtis. Curtis–a long-time acquaintance of Yerkes–claims that after Yerkes was arrested, he saw Houser with a briefcase similar to the one that police found in Yerkes's Ford. Yerkes thus insinuates that if Houser had the briefcase, then he could not have possessed the briefcase that police later found in his Ford. Curtis also claims that he saw Houser in possession of $200–$300 worth of pseudoephedrine tablets. The district court denied this motion. We will reverse such a denial only if the district court abused its discretion. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

A defendant is entitled to a new trial based upon allegations of newly discovered evidence only if defendant can show that: (1) the evidence was not discovered until after the trial; (2) due diligence would not have revealed the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such as to be likely to lead to acquittal. *United States v. Fellers*, 285 F.3d 721, 725 (8th Cir. 2002) (citations omitted).

Yerkes is not entitled to a new trial because he cannot show that this evidence is likely to lead to an acquittal. Yerkes attempts to use Curtis's testimony to show that the briefcase discovered was not his. However, he offers no evidence to prove that the agents seized a briefcase from Houser. Moreover, Yerkes's briefcase was not the only item that the agents seized when they inventoried the Ford. The agents also found a number of other items, all of which were listed on a Wal-Mart receipt that was found in Yerkes's camera bag on the night of his arrest. In addition, the description of the

two briefcases differ. Curtis described Houser's briefcase as having a large fold-over flap, but no shoulder strap. This is different from the description of the bag seized from the Ford.

Thus, Yerkes raised this exact issue at trial when he asserted that it was inconceivable that experienced drug agents would have missed the briefcase for several months. Instead, the briefcase, at best, would have impeached the government's witnesses who testified. This is not sufficient to merit a new trial, and as such, Yerkes's motion fails.

IV.

Yerkes lastly contends the district court erred in assessing a two-level upward adjustment for his role as "an organizer, leader, manager, or supervisor" of a criminal activity that involved fewer than five participants. U.S. Sentencing Guidelines Manual § 3B1.1(c). Such a sentencing enhancement under this section is based upon findings of fact, which we review for clear error. *United States v. Leonos-Marquez*, 323 F.3d 679, 683 (8th Cir. 2003).

To receive this enhancement, the Government need only prove that "the defendant controlled at least one other participant in the drug trafficking offense." *United States v. Brown*, 311 F.3d 886, 890 (8th Cir. 2002) (citation omitted). The evidence presented at sentencing showed that Yerkes was a manager or supervisor of a criminal activity. Here, Yerkes managed at least two others–Upchurch and Houser.

In addition, to apply an adjustment under § 3B1.1, a court should consider, among other things, the defendant's decision-making authority, the nature of his participation in the crime, whether he recruited accomplices, the degree of his participation in organizing the offense and his control and authority over others. *United States v. Simmons*, 154 F.3d 765, 768 (8th Cir. 1998) (quoting U.S.

Sentencing Guidelines Manual § 3B1.1, cmt. n. 4). Yerkes's activities track those described in Sentencing Guidelines § 3B1.1.

On several occasions Upchurch obtained precursors–including starting fluid, pseudoephedrine, and coffee filters–at Yerkes's request, so that he could manufacture methamphetamine. Yerkes also asked Houser to place his three vehicles (the Ford, the blue Mustang, and the blue pickup truck) in Houser's name. Yerkes also asked Houser to purchase precursors for him on three occasions. *See United States v. Lemmons*, 230 F.3d 263, 266 (7th Cir. 2000) (defendant assessed role enhancement because–among other things–others purchased precursors for him). Thus, the district court did not err when it assessed a two-level upward adjustment for Yerkes's role in the offense.

## V.

For the foregoing reasons, we affirm the judgment of the district court.

_____