# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 03-2196

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Michael Gerald Gamboa, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

———————————

Submitted: May 10, 2004
Filed: March 3, 2006 (Corrected March 22, 2006)

———————————

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

———————————

HANSEN, Circuit Judge.

After the district court denied motions to dismiss and to suppress evidence, a federal jury convicted Michael Gerald Gamboa on all counts of a seven-count indictment for offenses involving firearms, narcotics possession, and conspiracy to possess with the intent to distribute and to distribute methamphetamine, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A), and 21 U.S.C. §§ 841(a)(1) and 846. The district court imposed two concurrent terms of life imprisonment on the methamphetamine counts, a consecutive thirty years of imprisonment on a firearms violation, and a subsequent consecutive term of life imprisonment on a second

firearms violation, together with concurrent lesser sentences on other counts. On appeal, Gamboa attacks his convictions and sentences on numerous grounds. After careful consideration, we affirm in part and reverse in part the judgment of the district court.

## I. Background.

In 2001, the state of North Dakota began investigating Gamboa as a leader in a drug trafficking operation that bought and sold methamphetamine in Grand Forks, Fargo, and Bismarck. State officers obtained a search warrant from a North Dakota state court judge and, accompanied by federal officers, they searched Gamboa's business on May 29, 2002. After searching the address, his vehicle, and his person, the officers seized nine firearms, more than 500 grams of methamphetamine, and over $9,000 in cash. Gamboa was arrested on the premises pursuant to an outstanding warrant from Polk County, Minnesota, and transported to the Polk County Jail. The officers then discovered that there was also a warrant for Gamboa's arrest in Grand Forks County, North Dakota. On May 31, Gamboa posted bond on both the Polk County, Minnesota, and the Grand Forks County charges. Gamboa was not released, however, because a federal complaint and detainer had been filed against him on the same date.

Although a grand jury was in session on June 4 and 5, 2002, Gamboa's case was not presented to the grand jury at that time. Instead, on June 4, 2002, he made an initial appearance before a magistrate judge on the federal complaint, and on June 11, 2002, the Government filed a motion for an extension of time to file an indictment. After a hearing, the district court granted the motion, giving the Government 60 days from May 31, 2002, in which to file an information or indictment. On July 19, 2002, before the end of the 60-day extension, the grand jury returned an indictment against Gamboa. A superseding indictment was filed on September 13, 2002. Gamboa went to trial in December 2002 and was convicted on all seven substantive criminal counts of the superseding indictment.

II. Speedy Trial Act.

We review the district court's factual determinations for clear error and the court's legal conclusions de novo. United States v. Yerkes, 345 F.3d 558, 561 (8th Cir. 2003).

A. Indictment Delay.

The Speedy Trial Act, 18 U.S.C. §§ 3161-3174 (2000), dictates that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Under the statute, the remedy for a violation of this 30-day rule is the mandatory dismissal of the charges. 18 U.S.C. § 3162(a)(1). Because Gamboa was arrested on the federal complaint on May 31, 2002, the Speedy Trial Act clock for filing the indictment began running on that date. However, the Act also permits the district court to grant extensions of time in limited circumstances. Section 3161(h)(8) provides that certain periods of time are excluded when calculating the 30-day time period, including the following:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). The factors that a judge should consider when deciding whether to grant a continuance include:

> Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

18 U.S.C. § 3161(h)(8)(B)(iii).

On June 11, 2002, the Government requested such an extension in its Motion For Continuance of Speedy Trial Act Provisions. The Government submitted in the motion that:

> 3.  A regularly convened grand jury was in session shortly after the time of the defendant's arrest on the felony charge and due to expire on June 5, 2002. No other grand jury will be in session within the thirty days of the defendant's arrest.
> 4.  The United States did not have sufficient time to prepare the case for presentation to the grand jury before it was due to expire on June 5, 2002.
> 5.  The arrest on May 31, 2002, occurred at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in Section 3161(b).

(Index at 56.) At the detention/preliminary hearing the next day, the district court granted the Government's motion pursuant to § 3161(h)(8). It did so, however, only after what can be fairly described as an extensive judicial grilling of the Assistant United States Attorney by the court in order to make sure that such a continuance was truly warranted. The district court's intent to ensure that the Defendant's speedy trial rights were given full and fair consideration is readily apparent from the transcript of the hearing held on the Government's motion. The court's order stated:

> (1) The ends of justice are best served by the granting of the motion for continuance pursuant to 18 U.S.C. §§ 3161(h)(8)(A) and 3161(h)(8)(B)(iii) so as to allow the United States sufficient time to complete its investigation and to file an information or indictment charging defendant with the commission of a federal offense; and (2) The ends of justice outweigh the best interest of the public and the defendant in a speedy trial for the reason that the arrest occurred at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in § 3161(b).

(Id. at 58.)   Gamboa insists that the district court erred when it granted the Government's motion and that without the extension granted by the district court, the indictment was not obtained within the 30 days provided in the Act.  Gamboa also insists that the remedy for this violation is the dismissal with prejudice of all charges against him pursuant to § 3162.

Gamboa first argues that the real reason for the Government's failure to file an indictment was lack of diligent preparation, which is an impermissible reason under § 3161(h)(8)(C).  We respectfully disagree.  Section 3161 provides that an extension can be granted in situations where "it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section," § 3161(h)(8)(B)(ii), or "because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section § 3161(b)," § 3161(h)(8)(B)(iii).  Because the arrest occurred only a very few days prior to the expiration of a grand jury session, the district court did not err by finding that it would have been unreasonable to expect the Government to gather witnesses and present its case so quickly.

We also reject Gamboa's argument that the district court never explained how the ends of justice were served by granting the motion, as required by § 3161(h)(8)(A).  While a district court is required to state for the record its reasons for finding that the ends of justice are best served by granting a motion for a continuance,  18 U.S.C. § 3161(h)(8)(A); United States v. Stackhouse, 183 F.3d 900, 901 (8th Cir.), cert. denied, 528 U.S. 1033 (1999), in this case the district court's order provided reasons for the court's finding by following the language of the statute, thereby demonstrating "that [the district court] was aware of what requirements had to be met before a continuance could be granted," United States v. Mitchell, 723 F.2d 1040, 1044 (1st Cir. 1983), abrogated on other grounds by Henderson v. United States, 476 U.S. 321, 325-27 (1986); see also United States  v. Jean, 25 F.3d 588, 594

(7th Cir. 1994). Furthermore, both the motion filed by the Government and the transcript of the June 12, 2002, hearing set out the basic facts and circumstances, and "[w]here the motion sets forth the basic facts, and they are obvious, it is not necessary for the court to articulate them." Mitchell, 723 F.2d at 1044; see also Jean, 25 F.3d at 594. The district court's reasoning was also fully explained and articulated during the hearing. (June 12, 2002, Tr. at 17-19; Index at 159.) See Stackhouse, 183 F.3d at 901 (stating that "[c]ontemporaneity is not required"). Because it is clear from the record of the June 12, 2002, hearing that the district court very seriously and properly considered this speedy trial issue, "[w]e defer to the district court's factual determination that the ends of justice served by granting the continuance outweighed the best interests of the public and [the defendant] in a speedy trial." Id. at 902. We find no error of fact or law.

Gamboa also contends that his rights were violated when the Government did not notify him until the day of the preliminary hearing that the Government had filed the motion requesting an extension of time in which to file an indictment the day before. We hold that the lack of prior notice does not entitle Gamboa to a remedy. "[T]here is nothing in section 3161(h)(8)(A) requiring that a hearing must be held before a motion for continuance is granted." Mitchell, 723 F.2d at 1043. Likewise, no provision of the Act mandates notice within a certain time period when opposing counsel has filed such a motion, and no provision provides for dismissal of the charges where there is no notice. Furthermore, Gamboa was not deprived of the opportunity to argue his case at the hearing, and Gamboa very adequately preserved his objection to the extension with later filings.

B. Count Four of the Superseding Indictment.

Gamboa submits that the Speedy Trial Act, 18 U.S.C. § 3161(b), was violated because Count Four of the superseding indictment charging him with a violation of 18 U.S.C. § 924(c)(1)(A), using and carrying a firearm during and in relation to a drug trafficking offense (the conspiracy charged in Count One), was filed on September13,

2002, more than 30 days after his arrest on May 31, 2002, and was not included in the original indictment filed on July 19, 2002. We conclude that Gamboa waived his right to appeal this particular speedy trial issue by failing to move for dismissal of Count Four on this ground prior to his trial in the district court. See 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."); United States v. Brown, 287 F.3d 684, 687-88 (8th Cir. 2002); United States v. Van Chase, 137 F.3d 579, 583 (8th Cir. 1998). Because his failure to move for dismissal operates to bar the remedy, plain error analysis on appeal cannot result in any relief.

C. Pretrial Delay.

Gamboa's final Speedy Trial Act argument is that the Government violated 18 U.S.C. § 3161(c) because Gamboa was not tried within the 70 days specified in the statute, even after subtracting time attributable to excludable delays. We hold that Gamboa was brought to trial well within the time allotted by the statute.

The Speedy Trial Act mandates that "a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later." Yerkes, 345 F.3d at 561; see also 18 U.S.C. § 3161(c)(1). "Certain days, however, may be excluded from the seventy-day calculation. After these days are excluded, if the total number of days exceeds seventy, then upon a defendant's motion, the district court must dismiss the indictment." Yerkes, 345 F.3d at 561 (internal citations omitted); see also 18 U.S.C. § 3162(a)(2).

Gamboa's opening brief at pages 27-28 succinctly sets out his analysis of the 70-day speedy trial clock. He asserts that the clock began ticking on July 1, 2002, which was 30 days after Gamboa's federal arrest on May 31, and he calculates that 183 days transpired until the trial began on December 30, 2002. He concedes that

within the 183-day period there are 109 excludable days (the first of which occurs on August 7, 2002), which would leave 74 nonexcludable days (183 - 109 = 74), four more than the 70 days permitted by § 3161(c)(1). Hence, he argues, a violation of the statute occurred.

We conclude, however, that Gamboa's beginning premise is wrong. Because we have held, ante, that the district court correctly granted the Government additional time to file its original indictment, Gamboa's speedy trial clock did not begin to tick until July 19, 2002, when the grand jury returned the original indictment. See 18 U.S.C. § 3161(c)(1) (stating trial "shall commence within seventy days from the filing date" of the indictment "or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs"). From July 19, 2002, to December 30, 2002, is 164 days. Deducting the 109 excludable days conceded by Gamboa's brief (all of which occur after July 19 and before December 30) results in only 55 nonexcludable days, well within the 70 days allowed by the Speedy Trial Act. Gamboa's rights to a speedy trial were not violated, and he is entitled to no relief.

III. The Search Warrant.

The search warrant, issued by a North Dakota state judge, authorized a search of 2705 5th Avenue South in Fargo, North Dakota. The warrant itself provided,

> [A]ffidavit having been made before me by Vince Kempf, Fargo Police Department, that they have reason to believe that at the premises located at 2705 5th Avenue South, the entire building except the portion occupied by Johnson Company, Fargo, Cass County, North Dakota, there is now being concealed property more particularly described on the attached "Exhibit A" which constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which

is or has been used as the means of committing a criminal offense, and as I am satisfied that there is probable cause to believe that the property so described is being concealed at the premises above described . . . you are hereby commanded to search . . . the premises above described.

(Index at 137 (emphasis added).) Exhibit A listed several items that the officers expected to find on the premises, including firearms, items related to the possession of firearms, indicia of occupancy, records of the use or purchase of controlled substances, and computer hardware, software, and accessories. (Id. at 138.) Exhibit B, the applying officer's affidavit, which was sealed after the warrant was executed, contained facts supporting the affiant's assertion that probable cause existed, including a recounting of testimony, tips, and witnesses. Gamboa contends that the search warrant was not valid because (1) the warrant was not supported by probable cause; (2) the warrant did not meet the particularity requirement; and (3) the officers seized items beyond the scope of the warrant. Because of these alleged defects, Gamboa asserts that it was error for the district court to deny his motion to suppress the evidence seized in the search.

A. Probable Cause to Support Warrant.

Probable cause supporting the search warrant existed if the affidavit set forth facts sufficient to create a fair probability that evidence of criminal activity would be found on the premises. United States v. Gumm, 229 F.3d 698, 699 (8th Cir. 2000). Whether probable cause existed depends upon the totality of the circumstances, United States v. Oropesa, 316 F.3d 762, 766 (8th Cir. 2003), and "[w]e give considerable deference to the issuing judge's determination of probable cause," United States v. Dishman, 377 F.3d 809, 811 (8th Cir. 2004). We review for clear error a district court's factual findings supporting a denial of a motion to suppress evidence, and we review its legal conclusions de novo. Oropesa, 316 F.3d at 765-66.

We hold that the search warrant was supported by probable cause. A review of Exhibit B (Appellee's Add. at 4-14) plainly shows that the state judge issuing the search warrant "had a substantial basis for concluding that a search would uncover evidence of wrongdoing." Dishman, 377 F.3d at 811 (internal marks omitted). Exhibit B contains the judge's initials and they are dated the day of the warrant's issuance. Exhibit B has at least seven pages of information regarding Gamboa's possession of firearms, drugs, and drug paraphernalia, as well as Gamboa's use of the premises. The exhibit also includes detailed, color-coded maps (obtained from the fire department) to indicate the areas of the building in which Gamboa was known to operate and for which the officers sought authority to search.[1]

B. Fourth Amendment Particularity Requirement.

Gamboa next argues that the search warrant was not valid because it did not describe with particularity the location to be searched and the items to be seized, as required by the Fourth Amendment. We have held that "[t]o satisfy the particularity requirement, the place to be searched must be 'described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort' and to avoid mistakenly searching the wrong premises." United States v. Thomas, 263 F.3d 805, 807 (8th Cir. 2001) (quoting United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.), cert. denied, 444 U.S. 871 (1979)), cert. denied, 534 U.S. 1146 (2002). In the present case, the warrant authorized a search of the premises located at 2705 5th Avenue South, an address that pertained to a large edifice positioned on

---

[1]Gamboa also suggests that he is entitled to a hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978), in order to determine whether Officer Kempf knowingly made false or misleading statements in the affidavit that was submitted to the state court judge when applying for the warrant. See United States v. Pennington, 287 F.3d 739, 743 (8th Cir.), cert. denied, 537 U.S. 1022 (2002). We conclude that Gamboa has not made the "strong initial showing of deliberate falsehood that a defendant must make to warrant a Franks hearing." Id.

the corner of 5th Avenue and 27th Street in Fargo. Part of the structure faced 5th Avenue; the other part of the structure faced 27th Street Southwest. The part of the structure facing 27th Street had a different address, which was omitted from the search warrant – 445 27th Street Southwest. Gamboa argues that the correct address of his business was 445 27th Street Southwest, not 2705 5th Avenue, and therefore the warrant was facially invalid.

We hold that the particularity requirement was met in this case for several reasons. First, the record reveals that the search warrant, with the clearly incorporated Exhibit A, refers to the entire premises at that location–both the business at 445 27th Street Southwest and at 2705 5th Avenue South. The addresses are not structurally separate. "When a warrant specifically mentions certain structures, it authorizes the search of those structures and any other property not noticeably separated from them." United States v. Nichols, 344 F.3d 793, 797 (8th Cir. 2003). Gamboa points out that the Johnson Company, a business unaffiliated with him, was also located in the building with an address of 445 27th Street Southwest, but we fail to see how this helps his case. The fact that the warrant specifically excludes the portion of the building occupied by the Johnson Company further illustrates that the search warrant refers to the entire premises, including the portion of the building that Gamboa occupied.

Second, our court has recognized that the particularity requirement may be satisfied even where the address in the search warrant is not entirely accurate. See United States v. Carter, 413 F.3d 712, 715-16 (8th Cir. 2005); United States v. Valentine, 984 F.2d 906, 909 (8th Cir.), cert. denied, 510 U.S. 828 (1993); United States v. Ridinger, 805 F.2d 818, 819 (8th Cir. 1986); Gitcho, 601 F.2d at 372. Whether the particularity requirement is ultimately satisfied depends upon the circumstances. In this case, the officers had conducted extensive surveillance of the premises before the warrant was executed, the officers had personal knowledge of the

premises that they intended to search, and the premises that they intended to search were, in fact, searched.[2] Guided by the maps they had prepared and that the state judge had considered in issuing the warrant, there was little chance that the officers would mistakenly search the wrong premises. See Gitcho, 601 F.2d at 372.

Gamboa cites a recent Supreme Court case, Groh v. Ramirez, 540 U.S. 551 (2004), in support of his argument that the warrant did not satisfy the particularity requirement by specifying the items to be seized. In Groh, the Supreme Court held that a warrant violated the particularity requirement of the Fourth Amendment because the warrant did not list any of the items that were to be seized, and neither the application for the warrant (which listed the items sought) nor the affidavit providing probable cause accompanied the warrant. Id. at 557-58. We find Groh distinguishable. Unlike the warrant in Groh, the warrant in this case incorporated by reference "Exhibit A," which listed in detail the items to be seized, and "[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant." Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987). The Court in Groh did not rule upon the validity of a warrant that sufficiently incorporated a second document in order to meet the particularity requirement.

C. Scope of the Warrant.

Gamboa next maintains that the Government exceeded the scope of the search warrant by seizing items not specifically mentioned in the warrant. We hold that the officers did not exceed the scope of the search warrant. Considering the specific language of the warrant and the additional details provided in the attached Exhibit A, we conclude that the narcotics, currency, cellular phones, wallets, drug paraphernalia,

---

[2]In fact, Gamboa does not argue that the officers actually searched the wrong premises. In his brief to this court, he concedes that he was found and arrested in the portion of the building with the address 445 27th Street Southwest – the address that he argues should have been on the warrant. (Appellant's Br. at 34.)

and all of the other items that Gamboa lists, fall within the categories specified in the warrant. Drugs and their related paraphernalia are contraband whose seizure while searching for weapons was authorized by the warrant. Wallets and cell phones may well contain "records of the use and purchase of controlled substances" as stated in Exhibit A. We also hold that the officers did not exceed the scope of the warrant by searching the cars on the premises. "Though these vehicles were not specifically listed in the warrant as places to be searched, a vehicle found on a premises (except, for example, the vehicles of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises." Pennington, 287 F.3d at 745 (internal marks omitted). Because the white Lincoln was located within the warranted premises, it was subject to being searched for the firearms which the warrant authorized to be seized. When the trunk of the Lincoln was opened, officers discovered some long-barreled guns. Two banana-style magazines containing rifle shells and 450 grams of methamphetamine were found inside a tool box located within the trunk. See United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.) ("A lawful search extends to all areas and containers in which the object of the search may be found."), cert. denied, 502 U.S. 896 (1991); accord United States v. Evans, 92 F.3d 540, 543 (7th Cir.) ("If they are looking for a canary's corpse, they can search a cupboard, but not a locket. If they are looking for an adolescent hippopotamus, they can search the living room or garage but not the microwave oven. . . . It seems to us that a car parked in a garage is just another interior container . . . . If, as in this case, the trunk or glove compartment is not too small to hold what the search warrant authorizes the police to look for, they can search the trunk and the glove compartment."), cert. denied, 519 U.S. 972, 1020, 1045 (1996), and cert. denied, 520 U.S. 1120 (1997). The methamphetamine came into the searchers' plain view while they were searching for firearms and was itself contraband well within the scope of the warrant's terms. Its incriminating nature required its seizure. See United States v. Nichols, 344 F.3d 793, 799 (8th Cir. 2003).

IV.  Double Jeopardy.

A.  Counts Six and Seven.

Gamboa was convicted both of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count Six), and of being a fugitive in possession of a firearm, § 922(g)(2) (Count Seven).  Gamboa asserts that these firearm convictions result from a single act that constituted both offenses, and therefore the convictions violate the Double Jeopardy Clause of the Fifth Amendment.  This court en banc recently determined that separate counts alleging that a defendant was a felon in possession of a firearm in violation of § 922(g)(1), and that the same defendant was also a drug user in possession of a firearm in violation of § 922(g)(3), both counts arising out of a single act of firearm possession, constituted but one offense.  See United States v. Earnest Jesse Richardson, No. 04-3472 (8th Cir. Mar. 2, 2006).  Accordingly, we grant the Government's pending request to merge the convictions on Counts Six and Seven, and remand Count Seven to the district court with instructions to vacate the conviction, the sentence, and the special assessment imposed on that Count.

B.  Counts Four and Five.

Gamboa also argues that his convictions under Counts Four and Five, both for violations of § 924(c)(1)(A),[3] violated the Double Jeopardy Clause.  We respectfully disagree.

---

[3] Section 924(c)(1) provides:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . .  uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–

> (i) be sentenced to a term of imprisonment of not less than 5 years;
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection–

> (i) is a short-barreled rifle, short-barreled shotgun . . . the person shall be sentenced to a term of imprisonment of not less than 10 years; or
> (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall– . . .

> (ii) if the firearm involved is a machinegun . . . be sentenced to imprisonment for life.

(D) Notwithstanding any other provision of law-- . . .

> (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

-15-

It does not appear from our review of the record that Gamboa raised a double jeopardy objection to the indictment as to Counts Four and Five before trial. He did raise such an objection before his sentencing. (Index at 745.) Federal Rule of Criminal Procedure 12(b)(2) (2000) requires such an objection to have been made before trial or it is deemed waived pursuant to Fed. R. Crim. P. 12(f). We have, in prior cases, enforced the waiver rule. See United States v. Shephard, 4 F.3d 647, 650 (8th Cir. 1993), cert. denied, 510 U.S. 1203 (1994); United States v. Garrett, 961 F.2d 743, 748 & n.7 (8th Cir. 1992). In other cases, we have proceeded to do a plain error analysis. See United States v. Allen, 247 F.3d 741, 767 (8th Cir. 2001) (citing two other 8th Circuit cases where plain error review was undertaken even though a double jeopardy claim was not raised in the district court), cert. granted and judgment vacated, 536 U.S. 953 (2002), and cert. denied, 539 U.S. 916 (2003). We noted the open nature of the issue in United States v. Frazier, 280 F.3d 835, 845 (8th Cir.), cert. denied, 537 U.S. 911 (2002), and declined to join either side of the debate. Because we find no double jeopardy violation under any standard of review, we again decline to decide whether the failure to raise the objection pretrial precludes plain error review.

"The [D]ouble [J]eopardy [C]lause is violated in a single proceeding only where multiple punishments are imposed for the same crime contrary to the legislature's intent." United States v. Good Bird, 197 F.3d 1203, 1204 (8th Cir. 1999) (citing Jones v. Thomas, 491 U.S. 376, 380-81 (1989)). In order to determine whether two crimes are the same for double jeopardy purposes, we apply the test of Blockburger v. United States, 284 U.S. 299, 304 (1932). Under Blockburger, "[i]f each offense requires proof of an element not required by the other, the crimes are not considered the same, and a double jeopardy challenge necessarily fails." Good Bird, 197 F.3d at 1204. We have recognized that the Blockburger test "focuses on the statutory elements of the offenses, rather than the evidence presented at trial." Flittie v. Solem, 775 F.2d 933, 937 (8th Cir. 1985) (citing Illinois v. Vitale, 447 U.S. 410, 416 (1980)), cert. denied, 475 U.S. 1025 (1986). In addition, a proper analysis of a double jeopardy claim

requires us to examine not only the statutory provisions at issue, but also the specific charges brought against the defendant in the indictment. See Garrett v. United States, 471 U.S. 773, 786 (1985).

After carefully reviewing the statute and the superseding indictment, we conclude that Gamboa's convictions for Counts Four and Five do not violate the Double Jeopardy Clause because each count requires proof of an element not required by the other. Count Four of the superseding indictment charged that Gamboa and other named joint defendants knowingly used and carried the specific firearms listed in Count One's overt acts "and others" between January 1999 and the date of the indictment, during and in relation to the drug trafficking crime charged in Count One, i.e., the conspiracy to possess with the intent to distribute and conspiracy to distribute a controlled substance. (Index at 320.) Count Five charged that Gamboa (but no others) knowingly possessed certain specific firearms on May 29, 2002 (the day of the search when the weapons were found), in furtherance of the drug trafficking crimes charged, namely conspiracy to possess with the intent to distribute and conspiracy to distribute a controlled substance (Count One) and possession with the intent to distribute a controlled substance (Count Two).

Because the specific firearms charged are identical under both counts, no distinction can be made for Blockburger purposes on the basis of the weapons involved. However, Count Four does require at least one element not required in Count Five. Count Four requires a finding that Gamboa "used and carried" the firearms, while Count Five merely requires possession. See Bailey v. United States, 516 U.S. 137, 144 (1995) (holding that the language "use and carry" in § 924(c)(1) requires active employment of a firearm). Although implicit in a finding that Gamboa "used and carried" firearms lies a finding that Gamboa simultaneously "possessed" the firearms (because it would not be possible for him to use and carry firearms without also possessing them), the heightened requirement of the "used and carried" language

in Count Four suffices to show that Count Four required an element not also required by Count Five.

Count Five also requires an element not required by Count Four. Count Five charged possession "in furtherance of" a drug trafficking crime, while Count Four charged that Gamboa used and carried firearms "during and in relation to" a drug trafficking crime. We conclude that the language "in furtherance of" requires a slightly higher standard of participation than the language "during and in relation to," such that "during and relation to" is encompassed by the broader language "in furtherance of." See United States v. Combs, 369 F.3d 925, 930-33 (6th Cir. 2004); United States v. Ceballos-Torres, 218 F.3d 409, 412-15 (5th Cir. 2000), cert. denied, 531 U.S. 1102 (2001). Thus, because finding that a defendant possessed a firearm "in furtherance of" a drug trafficking crime requires a showing of something more than possession "during and in relation to" a drug trafficking crime, Count Five requires proof of an element that Count Four does not. Accordingly, like the Sixth Circuit in Combs, we conclude that the crimes charged in Counts Four and Five are separate criminal offenses, and Gamboa's conviction of each does not violate the double jeopardy provisions of the Constitution.

## V. Consecutive Thirty-Year Sentence for Possession of a "Machinegun" Pursuant to 18 U.S.C. § 924(c)(1).

At sentencing, the district court determined by a preponderance of the evidence that a particular firearm that Gamboa possessed (a modified IMI .45 caliber UZI ) was a machinegun and imposed a consecutive 30-year sentence for Count Four pursuant to § 924(c)(1). Gamboa argues that because a judge, and not a jury, determined that his firearm was a machinegun, the 30-year sentence violated his constitutional rights, citing Castillo v. United States, 530 U.S. 120 (2000), and Apprendi v. New Jersey, 530 U.S. 466 (2000). The Government responds that § 924(c) was amended in 1998 and is structurally distinguishable from the version of the statute that the Supreme Court reviewed in Castillo. We agree with the Government's analysis.

In Castillo, the Supreme Court held that the determination of whether a firearm was a machinegun under § 924(c)(1) (Supp. V. 1988) was "an element of a separate, aggravated crime" that must be determined by a jury upon proof beyond a reasonable doubt and not a sentencing factor to be decided by a judge upon a preponderance of the evidence. Castillo, 530 U.S. at 131. Castillo, however, involved an older version of § 924(c)(1). Congress has since amended the statute, and cases from both the Supreme Court and our own court suggest that, under the amended § 924(c)(1) in effect at the time of Gamboa's offense, the question of whether a firearm is also a "machinegun" relates to a sentencing factor that is properly determined by a judge upon a preponderance of the evidence. See Harris v. United States, 536 U.S. 545, 556 (2002) (plurality opinion) (holding that "[t]he statute regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by a jury"); United States v. Carlson, 217 F.3d 986, 987 (8th Cir. 2000) (same), cert. denied, 531 U.S. 1095 (2001). Although both Harris and Carlson dealt specifically with "brandishing" a weapon under § 924(c)(1)(A)(ii), and not whether a firearm is a "machinegun" under § 924(c)(1)(B)(ii), which is the provision implicated in this case, we conclude that the Supreme Court's statutory construction analysis of the amended § 924(c)(1)(A), see Harris, 536 U.S. at 552-53, applies with equal force to the factors listed in § 924(c)(1)(B). Use of the phrase "not less than 30 years" for a machinegun is the same as the § 924(c)(1)(A) language analyzed in Harris. "This is the language of a mandatory minimum sentence . . . ." United States v. Harrison, 272 F.3d 220, 225 (4th Cir. 2001), cert. denied, 537 U.S. 839 (2002). Further, the structure of the amended § 924(c)(1) is that of an offense with subsets of persons singled out for more severe punishment. See id. at 226. We agree with other circuits that have concluded that § 924(c)(1) is best construed as a single crime with a choice of penalty options all within the overarching statutory maximum life sentence. See United States v. Cavely, 318 F.3d 987, 1000 (10th Cir.) ("[A] determination of whether a firearm is a prohibited assault weapon under [§ 924(c)(1)(B)(i)] is a sentencing factor and not an essential element of the offense that must be proven at trial."), cert. denied, 539 U.S. 960 (2003); Harrison, 272 F.3d

at 226 (same); <u>United States v. Sandoval</u>, 241 F.3d 549, 552 (7th Cir.) (same), <u>cert. denied</u>, 534 U.S. 1057 (2001). <u>But see</u>, <u>United States v. Harris</u>, 397 F.3d 404, 409-14 (6th Cir. 2005) (holding a firearm-type enhancement in § 924(c) is an element of the offense which must be charged in the indictment and proved to the jury beyond a reasonable doubt).

For similar reasons, we are convinced that <u>Apprendi</u>, <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04 (2004), and <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738, 749 (2005), are not implicated because § 924(c) does not permit a judge to impose a sentence that is above the relevant statutory maximum. The Court held in <u>Apprendi</u> that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490; <u>see also</u> <u>Booker</u>, 125 S. Ct. at 748; <u>Blakely</u>, 542 U.S. at 301. However, § 924(c)'s unstated statutory maximum is life in prison. Thus § 924(c)'s structure sets forth detailed statutory <u>minimums</u>. In <u>Harris</u>, the Supreme Court explained the distinction:

> <u>Apprendi</u> said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime . . . by those who framed the Bill of Rights. The same cannot be said of a fact increasing the <u>mandatory minimum</u> (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As <u>McMillan</u> recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution. . . . The court has recognized that this process is constitutional, and that the facts taken into consideration need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt.

536 U.S. at 557-58 (emphasis added); <u>see also</u> <u>Sandoval</u>, 241 F.3d at 551 (stating the "convictions under § 924(c)(1)(A) carry a statutory maximum sentence of life

imprisonment, regardless of what subsection the defendant is sentenced under," and therefore "the classification of the firearm . . . did not increase the maximum possible penalty; rather, it raised the mandatory minimum").  Thus, when the fact at issue constitutes a sentencing factor and increases the mandatory minimum but not beyond the statutory maximum, the resulting increase in the defendant's sentence does not violate the constitutional rules set out in Apprendi, Blakely, and Booker.  But see, Harris, 397 F.3d at 409.  Because the facts concerning the type of firearm used in § 924(c)(1) are sentencing factors, and not elements of the offense, we also conclude that the United States was not required to show that Gamboa subjectively knew that the firearm was a machinegun.  See United States v. Nava-Sotelo, 354 F.3d 1202, 1206 (10th Cir. 2003), cert. denied, 541 U.S. 1035 (2004).

VI.  21 U.S.C. § 851 Procedure to Establish Prior Convictions.

Gamboa argues that he was denied due process because the district court failed to give him a hearing on the question of whether his prior felony drug convictions could be used to enhance his sentence on Counts One and Two pursuant to 21 U.S.C. § 841(b).  We respectfully disagree.

Before trial, the Government filed its notice of prior convictions pursuant to 21 U.S.C. § 851(a).  The notice alleged that Gamboa had three prior convictions for felony drug offenses as follows:  (1) a felony conviction for a drug distribution conspiracy occurring between September 1994 and November 1995, involving cocaine, methamphetamine, and/or marijuana, entered on October 11, 1996, in Polk County District Court, Minnesota; (2) a felony conviction for a controlled substance offense in the 5th degree, possession of a mixture containing cocaine occurring on or about September 13, 1995, entered on October 11, 1996, in Polk County District Court, Minnesota; (3) a felony conviction for delivery of marijuana occurring on or about November 27, 1995, entered in Grand Forks County District Court, North Dakota, on October 23, 1996.  Certified copies of the respective convictions were attached to the Government's notice.

In his written Memorandum in Regard to Sentencing filed two days before the sentencing hearing, the defendant responded to the Government's § 851 notice and asserted that because the prior convictions all arose out of a single criminal episode, they could not be used as separate convictions for enhancement purposes. He set forth his reasons why the convictions were related, and cited to United States v. Gray, 152 F.3d 816, 821 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999), for the proposition that "if two or more prior drug felony convictions 'result from acts forming a single criminal episode, they should be treated as a single conviction for sentencing enhancement under § 841(b)(1)(A).'" (quoting United States v. Millard, 139 F.3d 1200, 1209 (8th Cir.), cert. denied, 525 U.S. 949 (1998). He did not deny that he was the same person named in the prior convictions.

The Government responded in writing to the defendant's challenge to the use of the noticed prior convictions asserting that the prior convictions were for discrete separate criminal episodes separated by weeks of time and occurring in different states. The Government argued that each offense qualified as a valid prior drug felony conviction for sentence enhancement purposes with citations both to Gray and to United States v. Johnston, 220 F.3d 857 (8th Cir. 2000), for the proposition that a separate criminal episode may be an incident that is part of a series but forms a separate unit within the whole.

The district court took up the matter at the sentencing hearing, informing both counsel that he had read their written submissions and inviting further comments from them. Having heard both counsel out, the court ruled that the prior convictions did not "represent a single episode." (Sent. Tr. at 30-31.) The court made specific findings that the North Dakota conviction for the delivery of marijuana in Grand Forks County and the drug conspiracy conviction in Polk County, Minnesota, were both separate predicate felony convictions for the purpose of enhancing the sentences on Counts One and Two. (Sent. Tr. at 34.) After the court made its findings, the court inquired whether there were any other findings that it should make or consider

before imposing sentence. Gamboa's counsel said, "Nothing. No further findings Your Honor." (Sent. Tr. at 37.) Only when asked if there was any legal reason why sentence should not then be imposed did Gamboa's counsel complain that the court had not strictly complied with § 851's requirement that an inquiry be made of the defendant whether or not he admitted the prior convictions. The record shows that the district judge then painstakingly read into the record the whole of § 851(b) and (c)(1). After observing that Gamboa's counsel had filed objections to the notice and that it had received and considered those objections, the court formally called on the defendant to admit or deny the prior convictions. The defendant stated, "I deny."[4] The court then ruled that it had been previously advised in "written fashion as to the defendant's denials or invalidity of the prior convictions;" that it had "received, reviewed and ruled on those matters;" and that "based on [the] Defendant's personal denial at this time [it] would restate its conclusions and reasons and rejects the denial." (Sent. Tr. at 42.)

We conclude that the district court substantially complied with § 851's hearing requirement. Any procedural error there may have been in the district court's alleged failure to strictly follow the procedures outlined in § 851 is, in any event, harmless. See Fed. R. Crim. P. 52(a); United States v. Rounsavall, 115 F.3d 561, 566 (8th Cir.) (harmless error analysis applied to claim that district court failed to follow § 851's procedure), cert. denied, 522 U.S. 903 (1997). Gamboa received written notice of the prior convictions, he was permitted to respond to them both in writing and by

---

[4]Two of the prior drug convictions listed by the Government in its § 851 information were also alleged as the prior predicate felonies supporting the felon in possession of a firearm charge alleged in Count Six and the fugitive in possession of a firearm charge alleged in Count Seven. With respect to each of those counts, Gamboa entered into an Old Chief stipulation with the Government and admitted his status as a convicted felon. See Old Chief v. United States, 519 U.S. 172 (1997). His brief in this court explains that "[t]his was done to prevent the jury from learning of Gamboa's previous drug trafficking convictions." (Appellant's Br. at 50.)

-23-

counsel, and he was given an opportunity to be heard by the decision maker before any decision was made.

Gamboa's assertion that he was denied due process because the district court "failed to inform Gamboa as required that any challenge to [a] prior conviction which is not made before a sentence is imposed may not thereafter be raised to attack the sentence" (Appellant's Br. at 52) is belied by, and directly contrary to, the record. The district judge read that very language directly from § 851(b) out loud to the defendant and his counsel before sentence was imposed. (See Sent. Tr. at 40.)

The defendant's counsel asserted orally at sentencing that the Minnesota conspiracy conviction could not be used as a predicate felony drug offense because both Gamboa and his codefendant brother were represented by the same attorney during that proceeding, calling it a "constitutional defect prima facie" which invalidated the prior conviction. (Sent. Tr. at 42.) No proof was offered to support counsel's oral assertion of dual representation, and no proffer was made of any actual conflict in the representation.

Section 851(c)(2) provides that:

> A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. . . . Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for the failure to make a timely challenge.

-24-

Gamboa's counsel acknowledged that this particular constitutional claim was not included in Gamboa's written objections to the Government's § 851 notice. (See Sent. Tr. at 43.) No cause has been shown for the failure to do so.

Quite apart from the procedural defect noted above and the total lack of any proof to support the allegation of dual representation or of a conflict therein, our cases hold that "[j]oint representation by a single attorney is not a per se violation of a defendant's right to effective assistance of counsel." Dokes v. Lockhart, 992 F.2d 833, 836 (8th Cir. 1993), cert. denied, 513 U.S. 968 (1994). A defendant must show an actual conflict that adversely affected the attorney's performance in order to establish an ineffective assistance of counsel claim. Id. See also United States v. Acty, 77 F.3d 1054, 1056-57 (8th Cir.), cert. denied, 519 U.S. 872 (1996). Accordingly, we reject Gamboa's unsupported challenge to the predicate Minnesota conviction.

Gamboa also argues that the existence of the prior convictions used to enhance his sentence on Counts One and Two to life in prison had to be proven to the trial jury by evidence beyond a reasonable doubt and could not be determined by the trial judge. He is wrong on both counts. Apprendi, Blakely, and Booker all specifically except the fact of a prior conviction from their holdings. Despite his arguments to the contrary, Almendarez-Torres v. United States, 523 U.S. 224 (1998), is still the law, as our cases have so recently recognized. See United States v. Levering, 431 F.3d 289, 295 (8th Cir. 2005) ("Almendarez-Torres is still good law, which we will continue to follow until the Supreme Court instructs otherwise."); United States v. Carrillo-Beltran, 424 F.3d 845, 848 (8th Cir. 2005) ("The Supreme Court has not overruled its decisions in Almendarez-Torres and Apprendi . . . ."), petition for cert. filed, (U.S. Dec. 22, 2005) (No. 05-8358); United States v. Torres-Alvarado, 416 F.3d 808, 810 (8th Cir. 2005). The district court did not err in rejecting Gamboa's claimed denial of the prior convictions.

## VII. Change of Venue.

Gamboa argues that the district court abused its discretion when it denied his motion for a change of venue because of adverse pretrial publicity. See United States v. Nelson, 347 F.3d 701, 707 (8th Cir. 2003) (standard of review), cert. denied, 543 U.S. 978 (2004). We respectfully disagree. When reviewing a motion for a change of venue based on pretrial publicity, we engage in a two-tiered analysis. We first determine "whether the pretrial publicity was so extensive and corrupting that we must presume unfairness of constitutional magnitude existed." Id. (internal marks omitted). Second, if a presumption of unfairness is not warranted, we examine the voir dire testimony to determine whether those who served on the jury "demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion." Id. at 708 (internal marks omitted). We will reverse the district court's judgment only if we conclude that a change of venue was necessary to protect Gamboa's right to a fair trial. United States v. Allee, 299 F.3d 996, 1000 (8th Cir. 2002).

The pretrial publicity surrounding Gamboa's prosecution occurred in December 2002, the same month that the trial began. Several television news reports and newspaper articles mentioned the upcoming trial and Gamboa's involvement. Nothing in the record indicates that the media coverage was so extensive and corruptive that prejudice must be presumed. See Nelson, 347 F.3d at 707 (noting that the presumption is reserved for "rare and extreme cases"). And even assuming that any presumption of inherent unfairness is warranted, we cannot conclude that the district court abused its discretion because Gamboa has not established actual prejudice. After careful review of the voir dire record, we are satisfied that the voir dire process resulted in a fair and impartial jury. The district court took the proper precautions to ensure that the jury was impartial, noting that there had been recent news coverage of Gamboa's trial and asking whether the prospective jurors had seen or read the articles. Approximately half of those who had seen an article indicated that they simply glanced at it and had formed no opinion. (Voir Dire Tr., Dec. 30, 2002, at 10.) Of

those who had actually read one of the news articles, only one indicated that she might not have been able to be fair and impartial, and that prospective juror was excused for cause. (Id. at 73-74.) The other venire members indicated that they could judge the case fairly and would not be influenced by what they had read. We conclude that the jury selection process precludes a finding of actual prejudice. See Nelson, 347 F.3d at 710 (holding that there was no actual prejudice requiring a change of venue where each juror had indicated that he or she could hear the case fairly and impartially); Allee, 299 F.3d at 1001 (holding that the district court properly denied a motion for change of venue based on pretrial publicity because, even though there was extensive press coverage, the conduct of voir dire ensured that the seated jury would be fair and impartial).

## VIII. Jury Instructions.

Gamboa next insists that he was entitled to an instruction on coercion or duress in order to explain why his illegal activities continued for a substantial period of time. A district court has broad discretion when formulating jury instructions, and a defendant is entitled to a particular instruction only when the instruction both correctly states the law and also is supported by the evidence. See United States v. Johnson, 278 F.3d 749, 751-52 (8th Cir.) (standard of review), cert. denied, 536 U.S. 949 (2002). Whether there is sufficient evidence to support a decision to submit an instruction to the jury is a question of law to be determined de novo by the court. United States v. Hudson, 414 F.3d 931, 933 (8th Cir. 2005), petition for cert. filed, (U.S. Dec. 23, 2005) (No. 05-8138); United States v. Jankowski, 194 F.3d 878, 882 (8th Cir. 1999).

In order to show that he was entitled to an instruction on duress or coercion, Gamboa was required to establish:

> (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or

-27-

negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; (3) that he had no reasonable, legal alternative to violating the law; and (4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

Jankowski, 194 F.3d at 883 (internal marks omitted).  The district court refused to submit a duress or coercion instruction to the jury, finding that the evidence did not support giving the instruction:

> The court finds that no reasonable jury could find that Michael Gamboa lacked a reasonable legal alternative to violating the law.  There is no present impending threat. There were merely generalized fears at most and it is insufficient to present a defense of duress from [sic] the Eighth Circuit.  He failed to produce any evidence that he did not recklessly or negligently place himself in the situation that he found himself. The evidence has shown that the defendant had numerous opportunities to contact law enforcement but he did not.  . . . The court cannot accept the proposition that he continually had a gun at his head, so to speak, that would force him to do the illegal acts that had been shown in this case or intended in this case.

(Trial Tr. Vol. V. at 159-60.)  We agree with the district court.  Although Gamboa reasons that the nature of the drug trade makes it perilous to leave the business, he failed to demonstrate, or even argue to this court, that he had a "well-grounded apprehension of death or serious bodily injury," that he had not recklessly or negligently placed himself in that situation, or that he had "no reasonable, legal alternative to violating the law." Jankowski, 194 F.3d at 883.  The district court did not abuse its discretion by refusing to submit a jury instruction on the defense of duress or coercion.

IX. Due Process Violations.

Gamboa asserts that his due process rights were violated because the court admitted the testimony of witness Gerald Cory without proof that Cory was in fact a coconspirator as Gamboa claims Federal Rule of Evidence 801(d)(2)(E) requires. Gamboa provides no citation to the transcript to support his assertion that Mr. Cory's testimony was admitted pursuant to Rule 801(d)(2)(E), no citation to any allegedly infringing testimony, and no citation to any objection lodged against Cory's testimony. Our review of Mr. Cory's testimony reveals that he testified to his own personal observation of Gamboa's activities and to his own personal conversations with Gamboa. The only possible coconspirator statement which came in during Cory's testimony was Cory's testimony that Kyle Hilde, who himself testified as a government witness concerning his drug transactions with Gamboa and who was cross-examined by Gamboa's counsel, told Cory, "I would head out if I were you" (Trial Tr. Vol. II at 184, ll.14-15), when the two men encountered each other as Cory was leaving Gamboa's place of business. Gamboa's unsupported contention that before Cory could testify he had to be shown to be a coconspirator misapprehends Rule 801(d)(2)(E). Before Cory's testimony about what Hilde said to him could come in, Hilde (the declarant) had to be a coconspirator with Gamboa and the statement attributed to Hilde by Cory had to have been made in furtherance of the conspiracy. Our review of the testimony satisfies us that the admission of all of Cory's testimony was not error, let alone plain error.

Gamboa also argues that his due process rights were violated because the district court judge should have recused himself after admitting evidence that Gamboa had threatened to kill witnesses, the prosecutor, and the judge. Gamboa forfeited any argument that the district court judge should have recused himself because he never made a motion for recusal or disqualification to the district court, and thus we review only for plain error. See Fletcher v. Conoco Pipeline Co., 323 F.3d 661, 663 (8th Cir. 2003). Gamboa does not clearly state the legal basis for his assertion that recusal was

required.  Under either possible applicable federal statute, recusal is required if the judge bears a bias or prejudice that might call into question his or her impartiality. See 28 U.S.C. § 144; 28 U.S.C. § 455(a).  We note that "where a judge's opinions are based on facts introduced or events occurring in the course of the current proceedings," those opinions do not warrant recusal unless "they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  United States v. Sypolt, 346 F.3d 838, 839 (8th Cir. 2003) (internal marks omitted), cert. denied, 540 U.S. 1209 (2004).  While a defendant's threat against a judge may in some cases raise a sufficient question concerning bias on the part of that judge, recusal is not automatic on the mere basis of the judge's knowledge of the threat.  See United States v. Yu-Leung, 51 F.3d 1116, 1119-20 (2d Cir. 1995).  Gamboa points to no statement or other indications by the judge that would suggest the type of deep-seated antagonism necessary to demonstrate bias or partiality.  The experienced district court judge made a very careful record pursuant to Fed. R. Evid. 403 before admitting the testimony.  We conclude that the district court judge committed no plain error by not recusing himself sua sponte or by admitting the testimony.

## X.  Conclusion.

For the reasons stated above, we affirm the judgment of the district court concerning Counts One, Two, Three, Four, Five, and Six.  We reverse the conviction on Count Seven and remand to the district court for entry of an amended judgment consistent with this opinion.  Furthermore, we find no viable Booker issues in this case because Gamboa's sentences were statutorily mandated and were not imposed pursuant to any Guidelines determination.  We therefore deny all of Gamboa's postargument motions regarding the application of Booker, Blakely, and Apprendi, including his motions to submit supplemental briefing on these issues.  We also deny Gamboa's motion to dismiss his counsel and to proceed pro se for the remainder of this appellate proceeding, see Martinez v. Court of Appeal of Cal., 528 U.S. 152, 163 (2000) (holding that a criminal defendant has no constitutional right to self-representation on appeal), as well as Gamboa's numerous other pro se motions.

_____