In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4223

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCELO SANDOVAL,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CR-40019--Joe B. McDade, Chief Judge.

Argued January 24, 2001--Decided February 20, 2001

Before FLAUM, Chief Judge, and EVANS and WILLIAMS, Circuit Judges.

EVANS, Circuit Judge. A fresh question raised in this case is whether the classification of a firearm as a "semiautomatic assault weapon" under 18 U.S.C. sec. 924(c)(1)(B)(i), is a sentencing factor or an element of the offense (of using and carrying a firearm in connection with a crime of violence or drug trafficking). If it's an element, it must be submitted to a jury and proven beyond a reasonable doubt. We hold that it is a sentencing factor.

Marcelo Sandoval, a Chicagoan alleged to be a drug supplier for an Iowa gang called the Quad Cities Bishops, was indicted and convicted after a jury trial on three counts: kidnapping in violation of 18 U.S.C. sec. 1201(a)(1); using and carrying a firearm--during a kidnapping--in violation of sec. 924(c); and conspiracy to possess marijuana, cocaine, and methamphetamine with intent to distribute in violation of 21 U.S.C. sec. 846. He was sentenced to 20-year concurrent terms on the kidnapping and drug charges and 10 years consecutive on the sec. 924(c) count.

A lengthy excursion into the facts of this case is not required, but here is a short synopsis:

Sandoval thought a fellow named Rivas double-

crossed him on a drug deal by misdirecting a shipment of pot from Mexico to Iowa rather than Chicago. Sandoval, a relative (either a cousin or a nephew; the record refers to both), Hector Sandoval, and a few others kidnapped Rivas in Iowa, drove him at gunpoint to Chicago, and held him several days as collateral until their marijuana was returned. Several guns were employed by the kidnappers, including an AP-9, 9 millimeter Luger commonly known as a "Tech 9," a semiautomatic weapon which was held by Hector. The kidnapping was foiled by police, tipped off by Rivas' wife, who broke into the house where the party was going on.

The success of this appeal rests on a broad reading of Apprendi v. New Jersey, ___ U.S. ___, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum, must be submitted to a jury and proved beyond a reasonable doubt. See id. at 2362-63. But Apprendi did not overrule McMillan v. Pennsylvania, 477 U.S. 79 (1986), which upheld a keystone state statute requiring the imposition of a mandatory minimum sentence based on a finding by the judge, not a jury, that the defendant possessed a firearm during the commission of his offense of conviction. Rather, Apprendi limited McMillan's holding "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict . . . ." Apprendi, 120 S. Ct. at 2361 n.13. Relying on McMillan, Apprendi is inapplicable here because convictions under sec. 924(c)(1)(A) carry a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under. So the classification of the firearm--here as a semiautomatic assault weapon-- did not increase the maximum possible penalty; rather, it raised the mandatory minimum penalty from 5 to 10 years.

Sandoval relies on Castillo v. United States, ___ U.S. ___, 120 S. Ct. 2090 (2000), for the proposition that the statutory reference to firearm types in 18 U.S.C. sec. 924(c)(1)(B) creates separate substantive offenses, not sentencing factors. Castillo,/1 however, is distinguishable. There, the Court examined an earlier version of sec. 924(c)(1), which provided in relevant part:

(c)(1) Whoever, during and in relation to any crime of violence . . . ,

uses or carries a firearm, shall, in addition to the punishment provided for such crime of

violence . . . , be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machine gun . . . to imprisonment for thirty years.

18 U.S.C. sec. 924(c)(1) (1988 ed., supp. V). Castillo holds that this earlier version of sec. 924(c)(1) created separate criminal offenses based on the type of firearm used. But in reaching this conclusion the Court emphasized that the statute's structure placed the elements of the crime in a single sentence followed by subsections referring directly to sentencing issues. Castillo, 120 S. Ct. at 2093 ("Congress placed the element 'uses or carries a firearm' and the word 'machine gun' in a single sentence, not broken up with dashes or separated into subsections."). Accordingly, this structure signaled that "the basic job of the entire first sentence is the definition of crimes . . . ." Castillo, 120 S. Ct. at 2093.

The sentence structure of the present incarnation of sec. 924(c)(1)--the version at issue here--is different. And that was recognized in Castillo: "[I]n 1998 Congress reenacted sec. 924(c)(1), separating different parts of the first sentence (and others) into different subsections." 120 S. Ct. at 2093. Now, the first clause of sec. 924(c)(1), standing alone, defines the offense of using or carrying a firearm during a crime of violence, while subsections (A) and (B) single out subsets of those persons [those who carry or use firearms during crimes of violence or drug trafficking] for more severe punishment. In addition, the subsections under (A) and (B) are separated from the offense clause of the statute by the word "shall"--a clear indication that what follows are sentencing provisions. See Jones v. United States, 526 U.S. 227, 234 (1999); Castillo, 120 S. Ct. at 2093. Other circuits have concluded that these structural distinctions weigh in favor of treating new sec. 924(c)(1) as defining a single crime with a choice of sentencing penalties based on the presence or absence of various facts, rather than as a statute that defines multiple separate criminal offenses. See United States v. Pounds, 230 F.3d 1317 (11th Cir. 2000) (holding that sec. 924(c)(1)(A)(iii) is a penalty provision with stiffer sentencing implications when a firearm is discharged); United States v. Carlson, 217 F.3d 986 (8th Cir. 2000), petition for cert. filed, Nov. 16, 2000 (holding that sec. 924(c)(1)(A)(i) is a penalty provision with sentencing implications when a firearm is brandished). Agreeing with this authority, we hold that the classification of the weapon used

in a sec. 924(c) prosecution is a sentencing factor.

The two other issues in this appeal require little comment. During the trial, one of the jurors gave a letter to the judge indicating that, after seeing a witness the previous day, she realized she knew him, apparently having served as his tutor in the Moline (Illinois) school district. This prompted the judge to call the matter to the attention of the attorneys, and Sandoval's lawyer, during an in-chambers conference, said he didn't want the juror to remain on the panel and that he "would have exercised a peremptory" on her if he had known about her familiarity with the witness when the jury was selected. Removing the questioned juror and replacing her with an alternate, on this record, is far from an abuse of discretion, the standard by which the judge's actions are reviewed. See United States v. Zizzo, 120 F.3d 1338, 1349 (7th Cir. 1997).

Similarly, Sandoval's challenge to the sufficiency of the evidence supporting the kidnapping conviction is a nonstarter. His challenge is essentially an attack on the credibility of various witnesses to Rivas' abduction and confinement. But that testimony supported a finding that Rivas was moved across state lines at gunpoint and repeatedly told he would be killed unless he coughed up the marijuana. Having reviewed this evidence, we have no hesitation about concluding that, if believed, as it obviously was, it was sufficient to support the jury's verdict.
AFFIRMED.


/1 Although decided in 2000, Castillo was an old case (governed by old law) involving the Branch Davidian religious sect and its violent 1993 confrontation with federal agents in Waco, Texas.