UNITED STATES of America,
Plaintiff–Appellee,

v.

Judi DONEGAN, Defendant–Appellant.

No. 03–3264.

United States Court of Appeals,
Seventh Circuit.

Submitted April 28, 2004.

Decided April 28, 2004.

Timothy J. Chapman, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Judi Donegan, Pekin, IL, pro se.

Before RIPPLE, KANNE, and DIANE P. WOOD, Circuit Judges.

## ORDER

After a jury trial, Judi Donegan was convicted of bank fraud, 18 U.S.C. § 1344. She received a sentence of 41 months' imprisonment and was ordered to pay restitution of almost $300,000. Donegan filed a notice of appeal, but her appointed lawyer now moves to withdraw because he cannot discern a nonfrivolous basis for the appeal. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Donegan was notified that she could respond to the *Anders* brief, but she did not do so. Because counsel's brief is facially adequate, we review only the potential issues it identifies. *See United States v. Johnson,* 248 F.3d 655, 667–68 (7th Cir.2001) (citing *United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997) (per curiam)).

Donegan worked for more than twenty years as an accountant for Connelly–GPM, Inc., a Chicago recycling and manufacturing firm, and she eventually became comptroller and a vice president of the company. During the last six years of her employment, Donegan forged the signature of the company's owner and president, Stephen Klein, on a series of more than three hundred and fifty checks. She cashed the checks—each of which was for somewhere between five hundred and a thousand dollars—at a nearby currency exchange, and altered the company's bank statements to hide the disbursements. When her activities were discovered and her employer confronted her, she admitted to having taken money from the company. At her trial, however, she testified that Klein himself had devised the scheme as a way to avoid paying taxes, and that she gave all of the proceeds from the checks to him. Despite this testimony, the jury found her guilty of bank fraud, and the court sentenced her to 41 months' imprisonment, the low end of the guideline range.

Counsel examines five arguments that might be made on appeal, and concludes that they would all be frivolous. First, counsel asks whether Donegan could argue

that she received ineffective assistance of counsel. He says that Donegan believes her trial counsel was unprepared and should have sought a continuance. But, as counsel points out, the court did in fact grant trial counsel an eight-day continuance. Counsel also suggests that more preparation time would have made no difference to the outcome of the trial, given the extent of the evidence against Donegan, including her own admission that she forged Klein's signature on the checks. *See United States v. Traeger*, 289 F.3d 461, 470 (7th Cir.2002) (ineffective assistance claim requires showing of reasonable probability that, but for counsel's shortcomings, the result of the proceeding would have been different). In any event, counsel observes, ineffective-assistance arguments are rarely appropriate on direct appeal. *See United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2002). We agree that this argument would be frivolous.

■ Counsel next asks whether Donegan could argue that the district court should have excused a juror who had a casual acquaintance with one of the government's witnesses. Juror Barry Dolin alerted the court midway through the trial that he belonged to the same synagogue as Steven Levinson, a partner in an outside accounting firm that helped Connelly-GPM discover the fraud. Dolin explained that Levinson was not a personal friend, disclaimed any prior knowledge of where Levinson worked, and affirmed that he could evaluate Levinson's testimony impartially. Donegan nevertheless wanted Dolin removed from the jury, but her trial lawyer admitted to the judge that there was no "good reason for bumping him." As counsel points out, the decision not to remove a juror in these circumstances is within the sound discretion of the district court, *see United States v. Sandoval*, 241 F.3d 549, 552 (7th Cir.2001); *United States*

*v. Humphrey*, 34 F.3d 551, 557 (7th Cir. 1994), and is adequately supported by a juror's insistence that he can be impartial despite his acquaintance with the witness, *Humphrey* at 558. It would be frivolous in this case to challenge the court's use of its discretion.

■ Counsel's third potential argument concerns the sufficiency of the evidence against Donegan. To succeed in this argument, Donegan would need to show that the record "is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Reyes*, 270 F.3d 1158, 1168 (7th Cir.2001) (quoting *United States v. Garcia*, 35 F.3d 1125, 1128 (7th Cir.1994)). In this case, Donegan admitted that she forged and cashed the checks and that she altered the company's bank statements to evade detection. And, as counsel observes, the jury was entitled to disbelieve Donegan's testimony that she committed the forgeries only at Klein's request. We agree, therefore, that it would be frivolous to argue that the evidence was insufficient.

■ Counsel also examines whether various evidentiary rulings at Donegan's trial could be challenged. Counsel identifies one such ruling that may have been in error: the court sustained a relevancy objection when defense counsel asked Klein whether he ever wrote out any checks to Donegan and asked her to cash them so he could buy gasoline for his boat. Counsel suggests that Klein's answer to this question was relevant to Donegan's defense that she committed the forgeries at Klein's request. But counsel also notes that an erroneous evidentiary ruling will support a reversal only if the decision likely had "a substantial influence over the jury," *United States v. Gajo*, 290 F.3d 922, 926 (7th Cir.2002). The trial transcript shows that before the objection was made, Klein an-

swered that he had "[n]ever" written any such checks for Donegan to cash—an answer that, if anything, would undermine Donegan's defense theory. It would be frivolous to argue that the jury's verdict would have been different if it had considered this answer.

Finally, counsel considers whether it would be frivolous to argue that the district court should have allowed Donegan to raise the defense of coercion—specifically, to argue to the jury that she was compelled to commit the forgeries. Donegan testified that Klein not only asked her to forge his signature and cash the series of checks for him, but backed up those requests with threats against her and her family. The court allowed this testimony, but precluded Donegan's lawyer from mentioning coercion in his opening statement or when cross-examining the government's witnesses, and refused to instruct the jury on the defense. As counsel notes, a defense of coercion or duress requires evidence of imminent fear of death or serious bodily harm, and the absence of reasonable legal alternatives to avoid the threat. *See United States v. Tokash*, 282 F.3d 962, 969 (7th Cir.2002). Observing that Donegan had many opportunities to contact law enforcement officials about Klein's alleged threats during the six years in which she carried out her forgeries, counsel concludes that it would be frivolous to argue that the court should have allowed her to present this defense. We agree.

We therefore GRANT counsel's motion to withdraw and DISMISS the appeal.