\05-5529-cr
United States v. Freeman

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: September 11, 2007                     Decided: November 14, 2007)

Docket No. 05-5529-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

ROCKEFELLOW R. JOHNSON, PETER G. WOODBINE, ADRIAN MICHAEL COLE, JOSEPH PEDRO, KIRK PEDRO, CHRISTOPHER PENCIL, STEVEN HEWITT, ERROL JAMES, CHRISTOPHER LEWIS AND BRUCE WALSH,

*Defendants,*

MICHAEL FREEMAN,

*Defendant-Appellant.*

_____

Before:

STRAUB, KATZMANN and B.D. PARKER,

*Circuit Judges.*

_____

Appeal from an October 11, 2005 judgment of conviction of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*), sentencing defendant principally to a term of life imprisonment following conviction after a jury trial. Because we conclude that the District Court did not err in admitting a redacted version of Freeman's confession or in considering acquitted conduct when sentencing Freeman, the judgment of the District Court is

AFFIRMED.

_____

NORMAN TRABULUS, Garden City, NY, *for Defendant-Appellant*.

MARC P. BERGER, Assistant United States Attorney, Southern District of New York (Michael J. Garcia, United States Attorney, Joshua A. Goldberg, Celeste L. Koeleveld, Assistant United States Attorneys, *on the brief*), New York, NY, *for Appellee*.

_____

STRAUB, *Circuit Judge*:

Defendant-Appellant Michael Freeman appeals from the October 11, 2005 judgment of conviction of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*), sentencing Freeman principally to a term of life imprisonment following conviction after a jury trial. For the reasons set forth below, the judgment of the District Court is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2002, Freeman, along with a man named Derrick Newman, carried loaded firearms – including a .357 magnum revolver – as they entered the Bronx, New York apartment of marijuana dealers and, posing as buyers, attempted to rob them. In the ensuing struggle, Newman and one of the dealers, Joseph McLaughlin, were fatally shot with the magnum revolver. Freeman was also seriously wounded by the same gun. He fled, but collapsed on the street and was later hospitalized and arrested.

On October 5, 2004, the government filed a superseding indictment charging Freeman with five counts. The first three counts involved drug or robbery offenses: Count one charged Freeman with conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; count two charged Freeman with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and count three charged Freeman with using, carrying and

possessing a firearm that was discharged during and in relation to a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Counts four and five charged Freeman with committing murder through the use of a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. §§ 924(j)(1) and (2).

After a two-week trial that ended on March 9, 2005, Freeman was convicted of the first three counts, but was acquitted of counts four and five, the murder counts. On September 12, 2005, the District Court sentenced Freeman to, *inter alia*, a term of life imprisonment and three years' supervised release. This sentence was based in part on the District Court's application of United States Sentencing Guideline (U.S.S.G) § 2B3.1(c)(1), which provides an enhancement when "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111."[1] The District Court found, by a preponderance of the evidence, that Freeman committed the murders of which he was acquitted. Specifically, the District Court explained:

> I'm certainly entitled to and directed to consider relevant conduct. The relevant conduct here is without question. There is no dispute that the .357 magnum that this defendant possessed was used to kill both Newman and McLoughlin [sic].
> . . .
> Accordingly, there seems to be in my mind no question that the cross-reference . . . under [U.S.S.G.] Section 2B3.1C1 is applicable here. . . . I also note that the standard on relevant conduct remains the same – that is, preponderance of the evidence.

The District Court then concluded that the evidence, including ballistics evidence showing that the fatal shots were fired from where Freeman was standing, was "clear and convincing" that "[t]he defendant carried two loaded firearms, which he used during the robbery to shoot and kill two people."

---

[1]Section 1111 provides, in relevant part: "Every murder . . . committed in the perpetration of, or attempt to perpetrate . . . robbery . . . is murder in the first degree." 18 U.S.C. § 1111.

**DISCUSSION**

On appeal, Freeman makes two principal arguments: (1) that the District Court erred in admitting a redacted version of his confession; and (2) that the District Court erred in sentencing him to a term of life imprisonment based on the acquitted conduct. We address those arguments, in turn, below.

*1. Redacted Confession*

On January 27, 2002, special agents from the United States Drug Enforcement Administration ("DEA") went to Jacobi Medical Center in the Bronx, New York, to place Freeman under arrest. After being advised of his *Miranda* warnings, Freeman confessed to participating in the attempted robbery. Freeman admitted that on January 26, 2002, he accompanied Newman to an apartment in the Bronx for the purpose of robbing the occupants of marijuana and drug money. He explained that he and Newman planned to pose as purchasers of approximately 60 to 100 pounds of marijuana to gain entry to the apartment. Once inside, Freeman was to check the quality of the marijuana, pull out a bag containing "fake" money, and scan the apartment for any money that could be taken. Freeman also admitted that he and Newman brought two guns to the robbery and that he and Newman entered the apartment and saw at least two other individuals inside the apartment.

Freeman further admitted that he and Newman had committed similar robberies of drug dealers in the past. He also provided information about his identity and admitted that he had been arrested in 1999 on marijuana charges.

During this confession, Freeman claimed that on the night of the botched robbery, Newman pulled out a gun and a struggle ensued: Freeman fought with a tall "dread," while

4

Newman struggled with a dark-skinned, short, heavy Jamaican male. Freeman claimed to see both the "dread" and the Jamaican male with guns during the struggle and said that both he and Newman were shot during the robbery. Freeman said that he fought with the "dread" as he was leaving the apartment, and that he fell down a flight of stairs before leaving the building.

Before trial, the government advised the District Court and the defense that it intended to submit to the jury only the portions of Freeman's post-arrest statements in which he described the planning of the robbery, without including Freeman's statements about what happened inside the apartment and afterwards. Freeman objected, arguing that if the confession were to be admitted, the entire transcript should be submitted to the jury.

The District Court granted the government's request and admitted a redacted version of the confession. The court reasoned that the post-arrest statement was appropriately divided into two parts, and that Freeman's statements about what happened during the robbery were not relevant to his statements about what he and his co-conspirators had planned.

On appeal, Freeman argues that the District Court erred in admitting the redacted version of his confession because the redacted portions contained potentially exculpatory statements that should have been included pursuant to the rule of completeness embodied by Federal Rule of Evidence 106.[2] Under this principle, even though a statement may be hearsay, an "omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted

---

[2]"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. This rule is stated as to writings, but we have said that Federal Rule of Evidence 611(a) renders it "substantially applicable to oral testimony, as well." *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir. 1994) (internal quotation marks omitted).

portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987), *cert. denied*, 484 U.S. 844 (1987) (citations omitted). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (citations omitted). The trial court's application of the rule of completeness is reviewed for abuse of discretion. *Id*.

Here, the District Court did not exceed its allowable discretion in deciding to admit the redacted confession because, as the District Court noted, the redacted portion did not explain the admitted portion or place the admitted portion in context. The admitted portion of the confession related to Freeman and Newman's *plans* to execute the robbery, while the redacted portion related to the *execution* of the robbery. Moreover, the admitted portion pertained to conduct that occurred before Freeman and Newman entered the apartment, while the redacted portion related to what happened inside the apartment. Accordingly, the redacted statements were "neither explanatory of nor relevant to the admitted passages," *Jackson*, 180 F.3d at 73, and the District Court therefore did not err in refusing to admit them.

Freeman also argues that there "was a further distortion in giving the jury the impression that Freeman suddenly clammed up when his narrative reached the point where he and Newman were in the apartment." However, nothing in the record suggests that the government made an argument to that effect or gave such an impression to the jury. In fact, the jury acquitted Freeman of the murders, which occurred inside the apartment. Accordingly, this argument is purely speculative and does not merit relief.

### 2. Acquitted Conduct

Freeman next argues that the District Court erred in cross-referencing the murder Guideline during sentencing and imposing a life sentence based upon the acquitted murder conduct. However, we have previously established that district courts may find facts relevant to sentencing – as opposed to elements of the offense – by a preponderance of the evidence and in so doing may take into account acquitted conduct when sentencing defendants. *United States v. Vaughn*, 430 F.3d 518, 521 (2d Cir. 2005), *cert. denied*, 547 U.S. 1060 (2006). In *Vaughn*, we stated:

> [D]istrict courts may find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence . . . not authorized by the verdict.

*Id*. at 527. Nevertheless, we stated that "district courts should consider the jury's acquittal when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence." *Id*. Further, in *United States v. Mulder*, we explained, "the preponderance standard applie[s] to fact finding at sentencing even when the proposed enhancement would result in a life sentence. . . ." 273 F.3d 91, 116 (2d Cir. 2001), *cert. denied*, 535 U.S. 949 (2002). Here, the District Court found by a preponderance of the evidence that Freeman "carried two loaded firearms, which he used during the robbery to shoot and kill two people."[3]

Freeman argues that the District Court erred in imposing a life sentence based on the acquitted murder conduct "[b]ecause 18 U.S.C. § 924(j)(2), through [18 U.S.C.] § 1112, sets a

---

[3]In fact, the District Court stated that this finding met the more rigorous clear and convincing standard.

six-year maximum for causing death with a firearm in the course of a 924(c) violation."[4]

However, Freeman was not convicted and sentenced under 18 U.S.C. § 924(j)(2); he was convicted and sentenced under 18 U.S.C. § 924(c)(1)(A)(iii),[5] which, under the facts of this case, carries a ten-year mandatory minimum sentence.[6]

Although 18 U.S.C. § 924(c)(1)(A) does not specify a maximum sentence, we have previously stated in dicta that the maximum sentence under that statute is life imprisonment. *See United States v. Estrada*, 428 F.3d 387, 389 (2d Cir. 2005), *cert. denied*, 546 U.S. 1223 (2006) ("Like § 841(b)(1)(A), [§ 924(c)(1)(A)] provides increasing mandatory minimum sentences, depending on a defendant's specific firearm use, while the maximum of life imprisonment remains constant."); *United States v. Gonzalez*, 420 F.3d 111, 125–26 (2d Cir. 2005) ("[§

---

[4] 18 U.S.C. § 924(j)(2) provides, in relevant part: "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall . . . if the killing is manslaughter (as defined in section 1112), be punished as provided in that section." 18 U.S.C. § 1112 provides, in relevant part: "Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than six years, or both."

[5] 18 U.S.C. § 924(c) sets forth penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." The subsections to the statute set forth a series of sentencing enhancements, including a ten-year mandatory minimum sentence for cases in which "the firearm is discharged." 18 U.S.C. § 924(c)(1)(A)(iii).

[6] Freeman argues that the ten-year minimum should not apply here because the District Court failed to give certain jury instructions with respect to the discharge enhancement provided for in 18 U.S.C. § 924(c). However, "[§ 924(c)] regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris v. United States*, 536 U.S. 545, 556 (2002); *see also United States v. Luciano*, 311 F.3d 146, 153-54 (2d Cir. 2002), *cert. denied*, 526 U.S. 1164 (1999) (discussing *Harris* rule with approval). The District Court was therefore not required to instruct the jury at all regarding the discharge enhancement. Because the District Court found at sentencing that Freeman "carried two loaded firearms, which he used during the robbery to shoot and kill two people," the discharge enhancement was appropriately applied.

924(c)(1)(A)] provides three increasing mandatory minimum sentences depending on a defendant's specific firearm use, while an implicit statutory maximum of life imprisonment remains constant throughout."). The availability of such a maximum is strongly implied by the Supreme Court's majority opinion in *Harris v. United States*, 536 U.S. 545, 554 (2002), and the dissent in *Harris* explicitly refers to "the statutory maximum of life imprisonment for any violation of § 924(c)(1)(A)." *Id*. at 574 (Thomas, J., dissenting). Finally, among the Courts of Appeals, there appears to be broad agreement that § 924(c) authorizes a maximum sentence of life imprisonment. *See*, *e.g.*, *United States v. Gamboa*, 439 F.3d 796, 811 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 605 (2006) ("We agree with other circuits that have concluded that § 924(c)(1) is best construed as a single crime with a choice of penalty options all within the overarching statutory maximum life sentence."); *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005), *cert. denied*, 120 S. Ct. 2959 (2006) (explaining that the "maximum statutory sentence" for violation of § 924(c)(1)(A), "under *Harris* and the now advisory guidelines, is life imprisonment"); *United States v. Cristobal*, 293 F.3d 134, 147 (4th Cir. 2002), *cert. denied*, 537 U.S. 963 (2002) (noting that "for the base offenses in § 924(c)(1), . . . the maximum penalty is life"); *United States v. Avery*, 295 F.3d 1158, 1170 (10th Cir. 2002), *cert. denied*, 537 U.S. 1024 (2002) (same); *United States v. Sandoval*, 241 F.3d 549, 551 (7th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001) (same); *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000), *cert. denied*, 532 U.S. 984 (2001) (same). We see no reason to depart from this view and accordingly now hold that the maximum available sentence under § 924(c)(1)(A) is life imprisonment.[7]

---

[7]Moreover, to the extent that defendant argues that § 924(j)(2) somehow changes the statutory maximum provided for in § 924(c), we disagree. Section 924(c) provides penalties "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection

Accordingly, the District Court did not violate *Vaughn*'s prohibition against imposing a sentence that exceeded the maximum allowed by statute.

Freeman next argues that the District Court did not "consider" the jury's acquittal, as required by *Vaughn*, 430 F.3d at 527. However, it is clear from the record that the District Court did just that: the District Court specifically acknowledged the acquittals in issuing its sentence, and even noted that, in light of the "clear and convincing" evidence that Freeman committed the murders, the jury's acquittals on the murder charges were "anomalous at best."

Freeman also argues that the District Court erred in holding Freeman responsible for the murders of McLaughlin and Newman without finding that he actually shot them. He argues: "It is unclear [from the District Court's statement] whether [the District Court] truly concluded that Freeman literally shot McLaughlin or . . . that he was accountable for McLaughlin's death . . . on the theory that Freeman recklessly set in motion a chain of events ultimately leading to that death." This argument is unavailing. As we have noted, the District Court found specifically that "*he* used [the firearms] during the robbery to shoot and kill two people." This statement can be read to suggest nothing other than the District Court's finding that Freeman actually used the gun and to shoot Newman and McLaughlin.[8]

_____

or by any other provision of law." 18 U.S.C. § 924(c). Accordingly, while another provision could increase the mandatory *minimum* sentence under § 924(c), the statutory *maximum* provided for by § 924(c) cannot be reduced through cross-reference to another subsection or provision.

[8]Freeman also argues that it was improper for the District Court to base the cross-reference to the murder guideline on the murder of Newman because Newman "was not a victim of the robbery, but was one of the robbers." We need not decide this issue, because the District Court could have based the cross-reference solely on the murder of McLaughlin, who Freeman does not dispute was a "victim." In any event, we note that such an argument would likely fail. *See*, *e.g.*, *United States v. Hughes*, 211 F.3d 676, 691 (1st Cir. 2000) ("[Section] 2B3.2(c)(1) contemplates that there may be 'victims' of an extortion scheme other than the target of the

Accordingly, the District Court did not err in cross-referencing the murder guideline and sentencing Freeman to a term of life imprisonment based in part on the acquitted murder conduct.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the District Court.

_____

extortionate demand.”).

.