**UNITED STATES of America,**

v.

**Ledwin CASTRO, Defendant.**

**No. 03–CR–851 (ADS).**

United States District Court,
E.D. New York.

Nov. 19, 2009.

Benton J. Campbell, United States Attorney, Eastern District of New York, by Richard P. Donoghue, John J. Durham, Assistant United States Attorneys, Central Islip, NY.

Law Office of Peter J. Tomao, by Peter J. Tomao, Esq., of Counsel, Garden City, NY, for Defendant Ledwin Castro.

## *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

## *I. BACKGROUND*

On October 14, 2009, a jury convicted Defendant Ledwin Castro ("Castro") on all seven counts charged in the Third Superseding Indictment. Castro was convicted for conspiracy to commit assault with a dangerous weapon, 18 U.S.C. § 1959(a)(6) (Count One), assault with a dangerous weapon, 18 U.S.C. § 1959(a)(3) (Counts Two, Three, and Four), and the use of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1) (Counts Five, Six, and Seven). His convictions stem from his participation in two drive-by shootings in Nassau County on June 18, 2003. Presently before the Court is Castro's Fed.R.Crim.P. 29 ("Rule 29") motion for a judgment of acquittal. In the alternative, Castro seeks a new trial pursuant to Fed.R.Crim.P. 33 ("Rule 33").

The factual background and procedural history of this case have been discussed in this Court's prior decisions. *United States v. Castro*, 659 F.Supp.2d 415 (E.D.N.Y. 2009); *United States v. Vasquez*, 258 F.R.D. 68 (E.D.N.Y.2009). The Court presumes the parties' familiarity with those decisions.

## *II. DISCUSSION*

### A. Standard—Rule 29

■ In evaluating a motion for a judgment of acquittal, the Court must view the evidence in the light most favorable to the Government and draw all permissible inferences in the Government's favor. *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003) (citing *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999)). "[A] district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003) (citing Fed. R.Crim.P. 29(a), (c), and *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir.2002)). A defendant who challenges the sufficiency of the evidence to support his conviction under Rule 29 "bears a heavy burden." *United States v. Finley*, 245 F.3d 199, 202 (2d Cir.2001).

## B. Castro's Motion for a Judgment of Acquittal

Castro contends that he is entitled to a judgment of acquittal because the evidence was insufficient to support the jury's verdict on all seven counts in the indictment. In particular, Castro argues that the Government "failed to prove that the MS–13 enterprise charged in the indictment existed, that [Castro] was a member of [MS–13] and that the assaults were committed in order to increase and/or maintain his position within a racketeering enterprise." Castro also contends that his convictions for using a firearm during a crime of violence (Count 6 and 7) should be vacated because the Court failed to instruct the jury that the Government had to show, as a required element of 18 U.S.C. § 924(c)(1)(A), that the gun used in the charged assaults had been discharged. The Court will address these arguments in turn.

### 1. Whether the Government Failed to Prove the Existence of the Charged Enterprise

The Third Superseding Indictment charges that:

1. La Mara Salvatrucha, also known as the MS–13 (the "MS–13"), was a gang comprised primarily of immigrants from El Salvador, with members located throughout Long Island and elsewhere. The defendant LEDWIN CASTRO, also known as "Hueso," was a member of the MS–13. The Salvadorans With Pride (the "SWP") and the Bloods were rival street gangs, with members located throughout Long Island.

2. Members of the MS–13 sometimes signified their membership with tattoos reading, among other things, "13" and "MARA SALVATRUCHA," frequently written in gothic lettering. Members of the MS–13 engaged in criminal activity, such as murder and assault. Partic-

ipation in criminal activity by a member, especially violence directed at rival gangs, increased the respect accorded to that member and could result in a promotion to a leadership position. Members of the MS–13 purchased, maintained and circulated a collection of firearms for use in criminal activity.

3. The MS–13, including its leadership, membership and associates, constituted an "enterprise" as defined in Section 1959(b)(2) of Title 18, United States Code, that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

4. The MS–13, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving murder, in violation of the laws of the State of New York.

The RICO statute provides that the term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The concept of an "enterprise" embodied in the RICO statute has been interpreted broadly, consistent with the statute's command that its terms be "liberally construed to effectuate its remedial purposes." *Boyle v. United States*, ⎯⎯ U.S. ⎯⎯, 129 S.Ct. 2237, 2243, 173 L.Ed.2d 1265 (2009) (quoting § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961). The Supreme Court has recently explained that the enterprise element of a RICO charge is " 'proved by evidence of an ongoing organi-

zation, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Id.* at 2243 (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

In essence, Castro claims that the evidence showed only that MS–13 was a disparate network of local cliques and not a RICO enterprise. The Court disagrees. The Government elicited testimony from Ralph Admettre, Hembert Chacon, Bonerge Menjivar, and William Reyes, four former MS–13 members who testified in detail to the structure and organization of the gang. In addition to describing MS–13 customs, including gang colors, tattoos, and handsigns, these witnesses explained that the various MS–13 cliques conducted rituals and convened intra and inter-clique meetings. Each of the four witnesses also testified that the various cliques were not separate gangs, but rather subunits within the same gang.

This testimony was consistent with the expert testimony offered by FBI Special Agent Reynaldo Tariche. Agent Tariche corroborated the testimony of Admettre, Chacon, Menjivar, and Reyes, explaining how MS–13 members use graffiti, handsigns, and tattoos to communicate membership in the gang to other members and rivals. Agent Tariche confirmed that MS–13 holds inter-clique meetings called universals where various cliques gather. The Government also introduced the "Chino Wake Video," a video of an MS–13 member's wake that depicted members of various cliques paying their respects to a fallen gang member.

The evidence relating to the charged June 18, 2003 shootings also reflected that members of separate MS–13 cliques worked in concert as part of one enterprise. The evidence established that the two shootings involved members of both the Hempstead ("HLS") and Freeport ("FLS") cliques, as HLS member Admettre worked with Castro and two FLS members to carry out attacks on victims they believed to be rival gang members. Based upon this evidence, a reasonable jury certainly could have found that the Government proved the existence of the charged enterprise.

### 2. Whether the Government Failed to Prove Castro's Membership in the Enterprise

■ There was ample evidence, including Castro's own post-arrest statements, to prove Castro's membership in the charged enterprise. After his arrest in connection with the June 18, 2003 shootings, Castro was interrogated by Nassau County Detective Robert Brzeski. Detective Brzeski testified that Castro admitted he had been a member of MS–13 for one year and that he held "status" within the FLS clique. Detective Brzeski also noted that Castro had a tattoo on his back that spelled out the letters FLS. The jury was shown a photograph of this tattoo. Admettre, Menjivar, and Reyes confirmed that Castro held a leadership role within the FLS clique. The Court finds that a jury presented with this evidence would be hardpressed *not* to conclude that Castro was a member of the charged enterprise.

### 3. Whether the Government Failed to Prove that the Charged Assaults Were Committed in Order to Increase or Maintain Castro's Position Within the Enterprise

■ 18 U.S.C. § 1959 permits the Government to prosecute a defendant "for violent crimes intended, inter alia, to permit the defendant to maintain or increase his position in a RICO enterprise." *United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir.1992) (citing 18 U.S.C. § 1959(a)). The Second Circuit has determined that the motive element is satisfied where the Gov-

ernment shows that "the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Id.*

In his post-arrest statements to Detective Brzeski, Castro noted that one of his responsibilities as a leader within the FLS clique was to ensure that gang members met their "quota"—that is their requirement to "shoot, kill, beat, [and] stab [their] enemies." (Tr. at 577). Admettre and Reyes testified that members could earn respect and demonstrate loyalty to MS–13 by fulfilling their quotas. Menjivar also testified that a gang member could "rise in rank" within MS–13 by "doing drive-bys". (Tr. at 1289). The Court finds that a rational jury could connect these dots and find that Castro participated in the June 18, 2003 shootings because he knew it was expected of him by reason of his responsibilities as a member of MS–13.

### 4. Whether Castro is Entitled to a Judgment of Acquittal on Counts 6 and 7

█ Castro was convicted on Counts 6 and 7 of using a firearm in relation to crimes of violence. 18 U.S.C. § 924(c)(1)(A). Castro now contends that the Court erred in refusing to charge the jury that the Government had to show, as an element of this offense, that the gun had been discharged during the assaults. In particular, Castro claims that the question of whether he actually discharged a firearm is a matter that should have been left to the jury, not the Court. In order to address this argument, a brief review of the relevant substantive law is necessary.

In *Apprendi v. New Jersey*, the Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In the wake of *Apprendi*, there was some doubt as to the constitutionality of statutes like 18 U.S.C. § 924(c)(1)(A) that permit judges to make certain factual findings which increase a defendant's mandatory minimum sentence. The Supreme Court resolved this confusion in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

In *Harris*, the Court found, contrary to Castro's argument, that 18 U.S.C. § 924(c)(1)(A) "regards brandishing and discharging [a firearm] *as sentencing factors to be found by the judge, not offense elements to be found by the jury.*" *Harris*, 536 U.S. at 556, 122 S.Ct. 2406 (emphasis added). Turning to the constitutionality of the statute, the Court determined that a judicial finding which increases a defendant's minimum sentence, but does not extend the sentence beyond the statutory maximum, does not violate the Fifth or Sixth Amendments. *See Harris*, 536 U.S. at 558–60, 122 S.Ct. 2406 (observing that "judicial factfinding in the course of selecting a sentence within the authorized range does not implicate" Fifth and Sixth Amendment concerns).

Here, Castro appears to argue that a judicial finding that the weapon was discharged will increase his maximum sentence and that such a finding would therefore be impermissible under *Apprendi*. However, as the Second Circuit and all other Circuits addressing this issue have found, the maximum available sentence under 18 U.S.C. § 924(c)(1)(A) is life imprisonment. *See United States v. Johnson*, 507 F.3d 793, 799 (2d Cir.2007) (finding that the maximum available sentence under 18 U.S.C. § 924(c)(1)(A) is life impris-

onment); *United States v. Gamboa,* 439 F.3d 796, 811 (8th Cir.2006), cert. denied, 549 U.S. 1042, 127 S.Ct. 605, 166 L.Ed.2d 449 (2006); *United States v. Dare,* 425 F.3d 634, 642 (9th Cir.2005), cert. denied, 548 U.S. 915, 126 S.Ct. 2959, 165 L.Ed.2d 970 (2006); *United States v. Cristobal,* 293 F.3d 134, 147 (4th Cir.2002), cert. denied, 537 U.S. 963, 123 S.Ct. 396, 154 L.Ed.2d 319 (2002); *United States v. Avery,* 295 F.3d 1158, 1170 (10th Cir.2002), cert. denied, 537 U.S. 1024, 123 S.Ct. 546, 154 L.Ed.2d 436 (2002); *United States v. Sandoval,* 241 F.3d 549, 551 (7th Cir.2001), cert. denied, 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001); *United States v. Pounds,* 230 F.3d 1317, 1319 (11th Cir. 2000), cert. denied, 532 U.S. 984, 121 S.Ct. 1631, 149 L.Ed.2d 492 (2001).

Therefore, the Court's ultimate determination as to whether or not the gun was discharged (as opposed to merely being possessed or brandished) will have no impact whatsoever on Castro's maximum sentencing exposure; the Court's determination will only affect the mandatory minimum sentence that he faces. Thus, under the rule set forth in *Harris,* the Court was correct in refusing to charge the jury that the Government had to show, as an element of 18 U.S.C. § 924(c)(1)(A), that the gun had been discharged.

Having reviewed Castro's arguments, the Court finds that the evidence offered at the trial was sufficient to sustain the jury's verdict on all seven counts in the Third Superseding Indictment. Accordingly, Castro's Rule 29 motion for a judgment of acquittal is denied.

## C. Standard—Rule 33

"The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convict-

ed.'" *United States v. McCourty,* 562 F.3d 458, 475 (2d Cir.2009) (quoting *United States v. Ferguson,* 246 F.3d 129, 134 (2d Cir.2001), and *United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir.1992)). The Second Circuit has observed that to order a new trial under Rule 33, courts must be satisfied that "it would be a manifest injustice to let the guilty verdict stand." *Sanchez,* 969 F.2d at 1414 (quoting *United States v. Reed,* 875 F.2d 107, 114 (7th Cir.1989)). In evaluating a Rule 33 motion, "[t]he district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation," of whether the defendant has met these onerous burdens. *United States v. Ferguson,* 246 F.3d 129, 134 (2d Cir.2001). Ultimately, "[Rule 33] motions are granted only in 'extraordinary circumstances,' and are committed to the trial court's discretion." *United States v. Torres,* 128 F.3d 38, 48 (2d Cir.1997) (quoting *United States v. Moore,* 54 F.3d 92, 99 (2d Cir.1995)).

## D. Castro's Motion for a New Trial

█ Castro contends that he is entitled to a new trial under Rule 33 because the Court erred in: (1) precluding him from offering evidence relating to his guilty plea on state charges arising from the same assaults; (2) permitting the Government to introduce evidence of three homicides committed by MS–13 members; and (3) allowing FBI Special Agent Tariche to testify as an expert regarding MS–13.

The Court notes that Castro does not argue that it would be a manifest injustice to allow the jury's verdict to stand. He does not profess his innocence. Nor does he point to any extraordinary circumstances that would justify a new trial. Rather, Castro seeks to use Rule 33 as a vehicle to relitigate evidentiary rulings with which he disagrees. However, Castro

offers no authority to suggest that these allegedly erroneous evidentiary rulings would support his request for a new trial. In any event, the Court's own evaluation of the facts and circumstances of this case clearly reflects that a new trial is not warranted. Accordingly, Castro's Rule 33 motion is denied.

### III. CONCLUSION

For the foregoing reasons, Castro's motions under Rules 29 and 33 are **DENIED**.

**SO ORDERED.**